Suzanne Cruise CAMERON and Lenore Cruise Handlen, Respondents,

and

Kenneth T. Cruise, Marilyn Cruise Stocker and Carol Cruise, Appellants,

v.

Jacqueline MORRISON, R.N., Mark E. Gordon, M.D., Trinity Lutheran Hospital, and John Does and Jane Does, Defendants.

No. WD 49435.

Missouri Court of Appeals, Western District.

April 18, 1995.

Respondent's Motion for Rehearing Denied May 30, 1995.

Appellant's Motion for Rehearing and/or Transfer to Supreme Court Denied May 30, 1995.

Application to Transfer Denied July 25, 1995.

---

Charles Hammond, Overland Park, KS, for appellants.

James Christian Morrow, Kansas City, for respondents.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SPINDEN, Presiding Judge.

This dispute stems from a father's unsuccessful attempt to maintain peace among his children over proceeds from a lawsuit. Kenneth Arthur Cruise sued for the wrongful death of his wife. Two of the couple's six children, Suzanne Cameron and Lenore Handlen, joined his lawsuit. The record suggests that Cameron and Handlen bowed out of the suit at their father's behest. He purportedly promised to share equally any award he obtained with all of his children.

Kenneth Cruise died before the lawsuit was final. Cameron and Handlen rejoined the lawsuit to prosecute it. Their capacity, whether personal or as personal representatives of their father's estate, is in dispute.

Before trial, the parties proposed settlement. After hearing evidence on the settlement, the trial court awarded more than 40 percent of the settlement proceeds to Kenneth Arthur Cruise's personal representatives for reimbursement of medical, funeral and litigation expenses. After setting aside about 25 percent of the settlement for attorney fees, the court divided the remainder equally among Cameron, Handlen, and their brother, Kenneth T. Cruise. The trial court concluded that two other children, Marilyn Stocker and Carol Cruise, had waived any

right to collect proceeds from the lawsuit. The trial court included Kenneth T. Cruise in the award because he did not sign a waiver. The trial court did not mention a sixth child, James Cruise, who did not participate in the proceedings or claim a share of the award.[1]

The appellants assert that the trial court erred by (1) allocating a portion of the settlement proceeds to their father's estate, (2) refusing to admit into evidence a letter from an attorney to all the Cruise children indicating that he had received waivers and renunciations from all the children in regard to the wrongful death suit, and (3) ruling that Stocker and Carol Cruise had waived their right to collect proceeds. We agree that the trial court should have considered additional evidence concerning the waivers. We reverse and remand to the trial court to reconsider the waiver issue.

The lawsuit arose from the death of Alfreda Marie Cruise while she was a patient at Trinity Lutheran Hospital. She fell from her bed on November 28, 1988. Her husband alleged that her injuries from this fall caused or contributed to her death on August 20, 1989.

Animosity apparently erupted among the father and his children over his lawsuit for Alfreda Cruise's death. The quarrelling continued after he and two of his daughters filed suit on November 21, 1990. The father suggested that he continue the suit without his two daughter's participation. He told the other four children that if they waived their right to participate in the lawsuit and to receive proceeds from it, he would give each an equal share of his proceeds.[2] Three of the children—Stocker, Carol Cruise and James Cruise—executed the waivers, but Kenneth T. Cruise refused. The record does not tell us whether the respondents signed a waiver.[3]

On January 31, 1991, the respondents filed a motion to withdraw from the wrongful death suit as parties. The father continued as the sole plaintiff. He died on August 19, 1992. On October 27, 1992, the respondents asked that they "be substituted … as plaintiffs in the place and stead of" their father. Their motion said that they were "lawful successors or representatives" of their father. On November 4, 1992, the trial court ordered the respondents' substitution "as parties plaintiff in the place and stead of Kenneth A. Cruise, deceased." On April 7, 1993, the respondents filed an amended petition seeking damages for their own claims and not on behalf of their father's estate.

On October 20, 1993, the appellants filed separate motions to intervene as plaintiffs as a matter of right. On December 6, 1993, the trial court denied the motions.

In the meantime, the respondents negotiated a settlement of the dispute for $135,000, which the trial court approved on November 8, 1993. The appellants objected to the settlement and asked the trial court to set aside its approval because the respondents had not considered their claims for damages in reaching the settlement. The trial court overruled the objection and denied the appellants' request. The trial court concluded that Stocker and Carol Cruise had waived any right to receive any portion of the settlement. The trial court, however, sustained the motion as to Kenneth T. Cruise because he had not executed a waiver. The trial court found that Kenneth T. Cruise's failure to join in the lawsuit did not prejudice his right to receive a share of the settlement.

On February 4, 1994, the trial court convened a hearing to determine how to apportion the settlement. The trial court concluded that the father's estate should be included

1. In hopes of avoiding confusion, we will refer to Kenneth Arthur Cruise as the father. We will refer to Stocker, Carol Cruise, and Kenneth T. Cruise as the appellants and to Cameron and Handlen as the respondents.

2. The father apparently established a trust to receive the proceeds from his lawsuit. We know of the trust's existence only because of oblique references to it in the trial transcript and in the trial court's order. We do not know any details

concerning the trust. The trial court ruled that the father's assignment of the settlement proceeds to the trust was invalid, and the appellants do not challenge this as error.

3. The father's letter to the other children suggested that the respondents had agreed to sign a waiver, but the record does not indicate whether they actually signed one.

in the apportionment and ordered that $54,-700.59 be paid to the father's personal representatives for reimbursement of medical, funeral and litigation expenses. After setting aside more than $33,000 for attorney fees, the trial court divided the remaining $46,-549.71 equally among Cameron, Handlen, and Kenneth T. Cruise.

## Timeliness of Appeal

■ Before addressing the merits of the appellants' appeal, we must consider the respondents' contention that we do not have jurisdiction because the appeal was not filed in time. The respondents contend that because Stocker and Carol Cruise did not ask the trial court to reconsider its order denying their motion to intervene and did not appeal that denial, the trial court's order became final 10 days later. *See* Rule 81.04(a).[4]

The appellants had a right to appeal the trial court's denial of their application to intervene as a matter of right, *State ex rel. Reser v. Martin,* 576 S.W.2d 289, 290–91 (Mo. banc 1978), and they did not do so. They are not complaining in this appeal, however, about the denial of their application to intervene.

The respondents wrongly contend that the appellants' right to appeal now was lost by their decision not to appeal the denial of their motion to intervene. The appellants did not need to intervene to protect their rights to participate in the settlement. Section 537.095.1, RSMo 1994, says:

> [I]f two or more persons are entitled to sue for and recover damages as herein allowed, then any one or more of them may compromise or settle the claim for damages with approval of any circuit court, or may maintain such suit and recover such damages without joinder therein by any other person, provided that the claimant or petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under § 537.080. Any settlement or recovery by

suit shall be for the use and benefit of those who sue or join, *or who are entitled to sue or join,* and of whom the court has actual written notice.[5]

The appellants fall within the statute's purview without regard for their not intervening in the suit. Because they were entitled to sue or to join, they were entitled to appeal. *See Haynes v. Bohon,* 878 S.W.2d 902, 905 (Mo.App.1994). The respondents' contention is without merit.

## Apportionment of Settlement Proceeds

In their first point, the appellants allege that the trial court erred in allocating a portion of the settlement proceeds to their father's personal representatives. We disagree.

■ Section 537.020, RSMo 1994, says, "Causes of action for death shall not abate by reason of the death of any party to any such cause of action, but shall survive to the personal representative of such party bringing such cause of action and against the person, receiver or corporation liable for such death and his or its legal representatives." A cause of action for wrongful death survives to the personal representatives where the deceased instituted the action prior to death. *Pedroli v. Missouri Pacific Railroad,* 524 S.W.2d 882 (Mo.App.1975); *Stoddard v. Cockrum,* 531 F.Supp. 663 (W.D.Mo.1982). The *Pedroli* court said, "[U]nder the language of Section 537.020, Angelo Pedroli's cause of action for the wrongful death of his wife abated upon his death since he did not commence [an] action before his death. Accordingly, there was no cause of action that survived to his personal representative...." 524 S.W.2d at 885–86. The *Stoddard* court said, "The surviving spouse of Roscoe Robison, Nancy Lee Robison, did not institute an action in wrongful death prior to her own demise. Therefore, she had not appropriated the cause of action and it had not passed to her personal representative...." 531

---

**4.** That rule says, "When an appeal is permitted by law from a trial court, a party may appeal from a judgment or order by filing with the clerk of the trial court a notice of appeal. No such appeal shall be effective unless the notice of

appeal shall be filed not later than ten days after the judgment or order appealed from becomes final."

**5.** We added the emphasis.

F.Supp. at 666. In this case, the father initiated his lawsuit for his wife's wrongful death before his death.

■ Moreover, the father was a part of the class of persons entitled to sue for wrongful death under § 537.080.1(1), RSMo 1994; hence, pursuant to § 537.095, his estate was eligible to receive benefits of the wrongful death settlement. Section 537.095 says:

1. [I]f two or more persons are entitled to sue for and recover damages as herein allowed, then any one or more of them may compromise or settle the claim for damages with approval of any circuit court, or may maintain such suit and recover such damages without joinder therein by any other person, provided that the claimant or petitioner shall satisfy the court that he has diligently attempted to notify all parties having a cause of action under section 537.080. Any settlement or recovery by suit shall be for the use and benefit of those who sue or join, or who are entitled to sue or join, and of whom the court has actual written notice.

. . . .

3. In any action for damages under section 537.080, . . . upon the approval of any settlement for which a petition or application for such approval has been filed, the court shall state the total settlement approved. The court shall then enter a judgment as to such damages, apportioning them among those persons entitled thereto in proportion to the losses suffered by each as determined by the court.

Hence, even if the respondents were representing their personal interests and did not enter the lawsuit as representatives of their father's estate, their father's estate was not precluded from being reimbursed from the settlement proceeds. Failure to join in the suit does not prejudice any member of the class of persons entitled to sue under § 537.080.1 from receiving benefits provided the court has actual written knowledge of the party's rights, and because of the father's initiation of the lawsuit and petition, the trial court certainly had actual written knowledge of his expenses.

**Letter from Attorney Regarding Waivers**

■ In their second point, the appellants assert that the trial court erred in refusing to admit as evidence a letter from their father's attorney, John H. Norton, addressed to all the Cruise children. Norton indicated in the letter that he had received waivers and renunciations from all the Cruise children except Kenneth T. Cruise. They assert that the letter was relevant and material and was a business record, and, therefore, was an exception to the hearsay rule.

The letter was offered during Kenneth T. Cruise's testimony:

Q. I am going to hand you a document which has been marked as Defendant's Exhibit No. 9 and ask you if that is a letter that you received from Mr. Norton?

A. Yes, sir.

[APPELLANTS' ATTORNEY]: Judge, I'd move at this time that Defendant's Exhibit 9 be admitted.

[RESPONDENTS' ATTORNEY]: Well, I object to this as hearsay. Again, it's written by Mr. Norton who is not here to testify and subject to cross examination.

. . . .

THE COURT: Why is it not hearsay?

[APPELLANTS' ATTORNEY]: It's not hearsay[,] Judge, because this is a letter that recounts conversations that [Kenneth T. Cruise] had with Mr. Norton and Mr. Norton has reduced to writing the results of that conversation.

THE COURT: You can find some place in some book where it says that's an exception, right?

[APPELLANTS' ATTORNEY]: Judge, I believe I can.

THE COURT: Well, you haven't defined an exception for me that I recognize under the law.

[APPELLANTS' ATTORNEY]: Well, let me ask a few more questions of him then.

THE COURT: Very well. What's the exhibit number again?

[APPELLANTS' ATTORNEY]: This is Exhibit No. 9.

THE COURT: Thank you.

Q. (BY [APPELLANTS' ATTORNEY]) Would you review Exhibit No. 9. Have you reviewed Exhibit No. 9?

A. Yes, sir.

Q. Does that letter accurately record the conversation that you had with Jack Norton at that time?

A. Not completely, no.

Q. Is there something that's left out of it?

A. There were 4 conditions that I stated in my meeting with Jack Norton.

Q. Was that letter that you had received during the normal course of the conduct of this business, of this litigation from him?

A. You are referring to this letter here?

Q. Yes[.]

A. Yes.

[APPELLANTS' ATTORNEY]: Judge, it's a business record if nothing else.

THE COURT: The objection's sustained.

[APPELLANTS' ATTORNEY]: All right.

Q. (BY [APPELLANTS' ATTORNEY]) Does that letter reflect your recollection then of your conversations or your position at that time?

[RESPONDENTS' ATTORNEY]: Your Honor, excuse me, I'd like to object. Its [sic] been asked and answered[.] [H]e said it didn't.

THE COURT: Objection's sustained.

[APPELLANTS' ATTORNEY]: Judge, he said that it did reflect his recollection with one exception and the only exception being is that there was one other thing that he had stated at that time that was not in the letter.

THE COURT: You are asking him questions about an exhibit that's been excluded from evidence. The objection's sustained.

For a document to qualify under the business rule exception, § 490.680, RSMo 1994, requires:

A record of an act, condition or event, shall, insofar as relevant, be competent

evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

The appellants did not lay an adequate foundation for admission of Norton's letter as a business record. No one testified as to its mode of preparation or that it was prepared "at or near the time of the act, condition or event." The appellants' contention that the letter was a business record is without merit.

The appellants argue in the alternative that the letter was a part of the *res gestae* statement of their agent, Jack Norton, and was, therefore, admissible. The Supreme Court of Missouri has ruled that the phrase *"res gestae,"* being "virtually meaningless" would no longer be recognized "as carrying sufficient meaning to support either the admission of or an objection to proffered testimony." *Bynote v. National Super Markets, Inc.,* 891 S.W.2d 117, 121 (Mo. banc 1995).

The trial court did not err in refusing the letter on the grounds on which it was offered.

### Waivers by Stocker and Carol Cruise

In their last point, the appellants assert that the trial court erred in ruling that Stocker and Carol Cruise waived any right to receive a portion of the settlement proceeds. They contend that the waivers were invalid because conditions precedent had not been fulfilled and because no evidence existed that Stocker and Carol Cruise received any consideration in exchange for their waivers.

Stocker and Carol Cruise signed a waiver renouncing their rights in the wrongful death litigation. They contend that they signed the waivers because of their father's representation and conditional offer that they would receive a one-seventh share of the settlement proceeds of the wrongful death litigation. The respondents counter that because the waivers were unambiguous, Stocker's and Carol Cruise's intentions in signing the waiver must be ascertained from the four

corners of the waiver itself. They assert that the parol evidence rule prohibits reference to extrinsic evidence where the intent of a document is unambiguous. *See J.A. Tobin Construction v. State Highway Commission,* 680 S.W.2d 183, 193–94 (Mo.App.1984).

The respondents mistakenly invoke the parol evidence. As this court said in *Gibson v. Harl,* 857 S.W.2d 260, 269–70 (Mo.App. 1993):

> The parol evidence rule as a principle of substantive law prohibits the *contra-diction* [6] of integrated contracts. *Wulfing v. Kansas City Southern Indus. Inc.,* 842 S.W.2d 133, 146[6] (Mo.App.1992). It simply does not apply to parol testimony that does not contradict the certain terms of an integrated agreement.... Even a complete and integrated contract must be interpreted. Admission of oral testimony of agreements or negotiations contemporaneous with the execution of the written agreement are admissible to establish the meaning of the contract. *Rufkahr Constr. Co. v. Weber,* 658 S.W.2d 489, 497[8, 9] (Mo.App.1983); CORBIN ON CONTRACTS § 579 (1960); RESTATEMENT (SECOND) CONTRACTS § 214 comments a-c (1981).

That the father had an agreement with his children does not contradict the terms of the waivers. It merely shows Stocker's and Carol Cruise's motive for signing the waivers.

The trial court, in finding that the waivers were valid, did not make any findings regarding the agreement between Kenneth A. Cruise and his children. If the father did make the promise, the trial court should have examined the validity of the waivers in light of the promise. Hence, we remand to the trial court to make findings of fact regarding the agreement and whether it affected the validity of the waivers.[7]

### Conclusion

We reverse and remand to the trial court to consider whether the alleged agreement between Stocker and Carol Cruise and their father affected the validity of the waivers. If the trial court finds that the waivers were not valid, it shall include Stocker and Carol Cruise in the distribution of the settlement proceeds. We affirm the trial court's distribution of a portion of the proceeds to the estate of Kenneth Arthur Cruise.

All concur.

---

6. The emphasis was in the original.

7. Because we reach this conclusion, it is unnecessary, at this point, to address the consideration issue.