# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4063

_____

Brandy Andrews,                         *
                                       *

            Appellee,           *

                                         *    Appeals from the United States
           v.                      *    District Court for the
                                         *    Western District of Missouri.

David C. Neer, Roy Mireles, Kirk      *
Forgy, Steven Lance Newman,        *
Raymond Marion Baker, David Childs,  *
Ralph Anderson, Aaron Cole, David    *
Summers, Paul Harper,             *
                                         *

           Appellants.        *

_____

No. 99-4065

_____

Brandy Andrews,                         *
                                       *

           Appellant,          *
                                       *

           v.                      *
                                       *

David C. Neer, Roy Mireles, Kirk      *
Forgy, Steven Lance Newman,        *
Raymond Marion Baker, David Childs,  *
Ralph Anderson, Aaron Cole, David    *
Summers, Paul Harper,             *
                                         *

           Appellees.         *

_____

Submitted: November 16, 2000

Filed: June 7, 2001
_____

Before BOWMAN, FAGG, and BYE, Circuit Judges.
_____

BOWMAN, Circuit Judge.

Brandy Andrews (Andrews) brought this 42 U.S.C. § 1983 action against a broad array of defendants for damages arising from the death of her father, Bobby Andrews, while he was an involuntary patient at Fulton State Hospital in Fulton, Missouri. Her case proceeded to trial and judgment in her favor only against the defendants who are here the appellants. The claim tried was that these defendants—all security aides at the hospital—used constitutionally excessive force during the takedown and restraint that resulted in Bobby Andrews's death. The jury found these defendants liable and awarded damages to Andrews.

The defendant security aides, namely, David Neer, Roy Mireles, Kirk Forgy, Lance Newman, Raymond Baker, David Childs, Ralph Anderson, Aaron Cole, David Summers, and Paul Harper (hereinafter appellants) appeal from the District Court's partial denial of their motion for judgment as a matter of law or, in the alternative, a new trial. Appellants argue that Andrews lacks standing in her individual capacity to assert any claim under § 1983, that the District Court improperly instructed the jury, that the court abused its discretion by awarding punitive damages and failing to vacate the general punitive damages award after vacating Andrews's individual damages award, and that the jury rendered a verdict against the weight of the evidence. Appellants also allege error in numerous evidentiary rulings.

Andrews cross-appeals, challenging the District Court's adverse grant of judgment as a matter of law as to her claim under § 1983 for damages based on her own injuries.  We affirm on the cross-appeal.  On the appeal, we vacate the judgment and remand to the District Court for a new trial.

I.

The state of Missouri committed Bobby Andrews to Fulton State Hospital in 1983 after he was found not guilty of murder by reason of insanity.  On the evening of April 24, 1995, security aide Raymond Baker was distributing cigarettes in the ward where Bobby Andrews resided.  Bobby Andrews wished to purchase a cigarette, but lacked enough tokens.  When Baker refused to give him the cigarette, he became agitated and angry, backing into a corner and swinging a book at those who tried to approach him and calm him down.  Baker pushed the emergency code button, calling an "Orange Code" to which other aides at the hospital responded.  The group of security aides responding to the Orange Code included all of the other appellants.

The appellants surrounded Bobby Andrews and pulled him to the floor.  Once he was on the floor, various members of the Orange Code team grabbed each of Bobby Andrews's limbs to subdue and restrain him until they could apply leather cuff restraints.  During the restraint, which lasted from five to possibly twenty minutes, various code team members were in a position to compress Andrews's neck and chest and thus impede his ability to breathe.[1]  Paul Harper, one of the last aides to arrive at the scene, testified that so many aides surrounded Bobby Andrews that Harper could not see him.  Also, despite testimony that Bobby Andrews, a large man who was difficult to subdue, strenuously fought to escape the hold of the security aides, almost

_____

[1]During the trial, whether one of the security aides applied a choke hold was a disputed question of fact.  The parties stipulated that the official policy of Fulton Hospital banned the use of choke holds during patient restraints.

-3-

all the witnesses to the takedown testified that they do not remember him making any noise after he hit the floor.

Once the code team had the leather restraints in place, the team got up off Bobby Andrews and attempted to move him to a seclusion room. At that point, team members testified they first noticed that he had stopped moving, his lips were blue, and he did not appear to be breathing. Despite efforts to revive him, he died after being transported to the local community hospital.

Bobby Andrews's autopsy revealed a small amount of blood in the tissue surrounding the thyroid gland and distention of the veins in his eyes and cranium. The pathologist interpreted these findings as consistent with compression of the airway during the takedown. An expert witness for the plaintiff concurred.

Andrews's theory of the case was that the security aides used a choke hold or otherwise compressed Bobby Andrews's airway during the takedown, and as a result he suffered a fatal cardiac arrhythmia caused by a lack of oxygen. She sought damages on behalf of her father for the injury he suffered as a result of the appellants' allegedly unconstitutional use of force. She also requested damages for her own injuries as authorized by the Missouri wrongful death statute. Mo. Rev. Stat. § 537.080-.090 (1994). Finally, she requested punitive damages. The jury returned a verdict in favor of Andrews, awarding $250,000 to Andrews for injuries suffered by her father, $150,000 to Andrews for her own injuries, and $180,000 in punitive damages. The District Court subsequently vacated the award of damages to Andrews for her own injuries, holding that the compensable injuries were limited to those suffered by her father and that § 1983 did not incorporate state wrongful death remedies that would allow Andrews to recover damages for her own injuries.

II.

Appellants argue the District Court erred when it held that Andrews has standing to pursue a § 1983 action to recover damages for injuries suffered by her father.  Under § 1983, state actors who infringe the constitutional rights of an individual are liable "to the party injured."  42 U.S.C. § 1983 (1994 & Supp. IV 1998).  The appropriate plaintiff is obvious when a party survives his injuries, but the language of § 1983 makes no mention of permissible plaintiffs when the injured party dies.  Under 42 U.S.C. § 1988(a) (1994), in this situation we look to state law to determine who is a proper plaintiff, as long as state law is not inconsistent with the Constitution or federal law. See Robertson v. Wegmann, 436 U.S. 584, 588-90 (1978).  Generally, state survival statutes govern survival of personal injury actions.  Appellants argue that Andrews cannot pursue a § 1983 action in her individual capacity because the Missouri survival statute, Mo. Rev. Stat. § 537.020 (1994), requires that all suits for personal injury be brought by the personal representative of the decedent's estate, and Andrews has not been so appointed.  We hold, however, that under Missouri law the Missouri survival statute is inapplicable in the current case.  As the District Court correctly determined, the Missouri wrongful death statute applies and provides Andrews standing to pursue a § 1983 action on behalf of Bobby Andrews.

The Missouri survival statute provides that "[c]auses of action for personal injuries, other than those resulting in death, . . . shall not abate by reason of [the injured party's] death" and it allows the action to survive "to the personal representative of such injured party."  Mo. Rev. Stat. § 537.020(1).[2]  The statute unambiguously authorizes

---

[2]The statute also provides that "[c]auses of action for death shall not abate by reason of the death of any party to any such cause of action, but shall survive to the personal representative of such party bringing such cause of action."  Mo. Rev. Stat. § 537.020(1).  Appellants attempt to employ this language to distinguish actions for "wrongful death" from actions "for death" under Missouri law.  They assert that the phrase "action for death" in the survival statute means an action brought for damages inflicted when a personal injury causes the decedent's death.  The Missouri Supreme Court has held that the statute's reference to a "cause of action for death" does not refer

the survival of claims that arise from non-fatal personal injuries where the injured party later dies of unrelated causes. Such claims must be pursued by the personal representative of the decedent's estate. On the other hand, the statute's language clearly limits its application to cases where the personal injury did not cause the decedent's death. See id. ("Causes of action for personal injuries, other than those resulting in death, . . . shall not abate by reason of his death . . . .") (emphasis added); Wollen v. DePaul Health Ctr., 828 S.W.2d 681, 685 (Mo. 1992) ("The language of the survivorship statute and the wrongful death statute are mutually antagonistic. The survivorship statute applies when the injury alleged did *not* cause death, and the wrongful death statute applies when the injury did cause death."). In the present case, even if Andrews had been appointed as the personal representative of her deceased father, she would not have standing under the Missouri survival statute to pursue a § 1983 claim for injuries caused by the appellants to Bobby Andrews. Those injuries resulted in his death and, consequently, the Missouri survival statute does not apply.[3]

to the type of action at issue in Andrews's case; rather, it refers to a situation where a cause of action for the wrongful death of another accrued to the decedent before the decedent's death. See Cameron v. Morrison, 901 S.W.2d 171, 174-75 (Mo. Ct. App. 1995). For example, if before his own death the decedent's wife was killed in an automobile accident as a result of the negligence of another motorist, the decedent would have had a cause of action for the wife's wrongful death pursuant to section 537.080. Section 537.020 simply allows such an action to survive to the decedent's estate if the decedent initiated the action prior to his death. See id.

[3]Appellants argue that our decision in Frey v. City of Herculaneum, 44 F.3d 667 (8th Cir. 1995), mandates application of the Missouri survival statute in this case. We disagree. In Frey, we were troubled by the issue of standing under Missouri law and merely remanded the action to the district court for a determination of whether the Missouri survival or the wrongful death statute governed. See id. at 671. Because on remand the case was dismissed without a further published opinion on this issue, neither the district court nor this Court made a determination having precedential authority as to the proper governing statute under Missouri law. See Frey v. City of Herculaneum, No. 92-CV-1798 (E.D. Mo. Oct. 6, 1995).

Each of the other cases appellants cite for the proposition that the Missouri

It is the Missouri wrongful death statute that addresses the survival of injury claims that result in death.  See Wollen, 828 S.W.2d at 685.  The statute provides that

> [w]henever the death of a person results from any act . . . which, if death had not ensued, would have entitled such person to recover damages in respect thereof, the person or party who . . . would have been liable if death had not ensued shall be liable in an action for damages, notwithstanding the death of the person injured, which damages may be sued for:  (1) By the spouse or children or the surviving lineal descendants . . . .

Mo. Rev. Stat. § 537.080.  The Missouri Supreme Court has declared the wrongful death statute to be the sole source of a cause of action in Missouri where the injuries sustained by the decedent caused the decedent's death.  In Sullivan v. Carlisle, the court warned that the wrongful death statute "should not be confused with the so-called 'survival statutes,' which ensure that pre-existing claims will not abate upon the death of the plaintiff or defendant."  851 S.W.2d 510, 514 & n.6 (Mo. 1993) (describing section 587.808 as a combined "death and survival" statute).  The Missouri Supreme Court has made it plain that in cases such as that of Bobby Andrews, under Missouri law the personal action arising from his injury and death survives to his spouse or

---

survival statute governs the issue of standing is distinguishable on its facts from this case.  E.g., Small v. American Telephone & Telegraph Co., 759 F. Supp. 1427, 1427 (W.D. Mo. 1991) (considering case of plaintiff who was alive when action was filed but who died before case went to trial).  Moreover, appellants cite numerous unpublished cases in their brief (without making explicit the fact that they are unpublished), none of which further their position on this point.  We direct appellants' attention to the Eighth Circuit's rule regarding the citation of unpublished opinions in parties' briefs.  See 8th Cir. R. 28A(i) ("Unpublished opinions are not precedent and parties generally should not cite them.").  Appellants did not follow the directives of this rule.  Rule 28A(i) continues to govern in this Circuit, and we urge the parties appearing before this Court to comply with its terms.  See Anastasoff v. United States, 235 F.3d 1054, 1056 (8th Cir.) (en banc), vacating as moot Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000).

children or other descendants. We apply here the Missouri Supreme Court's clear statement of Missouri law. See Bass v. General Motors Corp., 150 F.3d 842, 847 (8th Cir. 1998) ("In resolving any substantive issues of state law, we are bound by the decisions of the Missouri Supreme Court.").

Finally, we conclude that the purposes of the Missouri wrongful death act are consistent with the goals of § 1983. Compare O'Grady v. Brown, 654 S.W.2d 904, 908-09 (Mo. 1983) (concluding that one of the purposes of the Missouri wrongful death statute is to deter tortious or other harmful conduct that leads to death) with Berry v. City of Muskogee, 900 F.2d 1489, 1503 (10th Cir. 1990) (concluding that Congress intended § 1983 to provide a "significant remedy for wrongful killings," to provide compensation to victims, and to "provide special deterrence for civil rights violations"). We find no inconsistency in applying this statute to provide standing to Brandy Andrews. Missouri law gives Andrews standing as an individual to assert an action for personal injuries to her father resulting in his death, and we look to this state law. We hold that Andrews has standing to bring this § 1983 action by virtue of Missouri Revised Statute § 537.080.[4]

## III.

Appellants next argue that the District Court erred by improperly instructing the jury on Andrews's claim. They argue that the court's verdict-directing instructions[5]

---

[4]Appellants' argument, that because Brandy Andrews dismissed her pendent state-law wrongful death claim before trial her remaining claims are therefore survival claims and the survival statute should govern, lacks merit. We look to Missouri's wrongful death statute solely for the purpose of establishing whether Andrews has standing to bring this § 1983 action to recover for her father's injuries.

[5]Appellants challenge instructions 16 through 26. Each of these instructions contains identical language; the only difference among them is the insertion of a different defendant's name.

confused three distinct theories of recovery—excessive force, failure to protect, and deliberate indifference—and erroneously allowed the jury to find each security aide liable without first finding that he used excessive force in the takedown and restraint of Bobby Andrews. They argue that the court should have used a reasonableness standard to guide the jury's consideration of the use of force against Bobby Andrews, and therefore that their motion for a new trial should be granted.

We review allegedly erroneous jury instructions for an abuse of discretion, considering whether the instructions, when viewed together in light of the evidence and the applicable law, fairly submitted the issues in the case to the jury. Grain Land Coop v. Kar Kim Farms, Inc., 199 F.3d 983, 995 (8th Cir. 1999). Furthermore, "errors in jury instructions are reversible only if they adversely affect the substantial rights of the complaining party." Hallberg v. Brasher, 679 F.2d 751, 757 (8th Cir. 1982).

The jury instructions directed a verdict for Andrews if the jury first found that each aide "acted with deliberate indifference by restraining Bobby Andrews," and second, that "as a direct result, Bobby Andrews was fatally injured." The instructions further defined deliberate indifference as requiring plaintiff to "prove that defendant [security aide] knew that Bobby Andrews faced a substantial risk of serious harm during the restraint . . . and disregarded that risk by failing to take reasonable measures under the circumstances to protect Bobby Andrews." Thus, the court applied a deliberate-indifference standard, defined in terms of a failure-to-protect theory, to Andrews's claim. In denying appellants' post-verdict motion for a new trial, the court explained that it gave such an instruction because Andrews's claim was "not that Defendants restrained [Bobby Andrews] with unnecessary violence, but rather that Defendants failed to assist him after he was injured by this restraint." App. at 154.

Neither the verdict-directing instructions nor the District Court's post-verdict characterization of Andrews's claim, based upon the record as a whole, accurately states the basis of the claim that Andrews presented to the jury. In the trial record, the

court and the parties continually refer to the single claim at issue as an excessive-force claim. During the discussion of the jury instructions immediately before closing arguments, the court stated that "these are the verdict directing instructions for each of the named appellants on the excessive force claim." Tr. at 701 (emphasis added). Later in that discussion, the court noted, "I should make it clear in terms of the excessive force claim, and why I have chosen the deliberate indifferent [sic] standard." Id. at 704 (emphasis added). In response to a defense objection during closing arguments, the court replied that "[c]ertainly an effort to cover something up would go to the excessive force and the credibility" issues in the case. Id. at 726 (emphasis added).

In addition to these comments, the jury instructions contain numerous references to "excessive force." The instruction given to the jury at the beginning of the trial describes Andrews's claim: "The plaintiff alleges that the defendants, while acting under color and authority of the State of Missouri Department of Mental Health, used excessive and unreasonably deadly force against Bobby Andrews." App. at 57 (emphasis added). Furthermore, the verdict-directing instruction for each defendant states that the jury's verdict "must be for plaintiff Brandy Andrews and against defendant . . . on Plaintiff's claim of excessive force if all of the following elements have been proved by the preponderance of the evidence." App. at 76-86 (emphasis added). Finally, the punitive damage instruction for each defendant directs the jury to award punitive damages if it finds that "the conduct of [the defendant] was recklessly and callously indifferent to decedent Bobby Andrew's right to be free from excessive force." App. at 88-98 (emphasis added).

The many references to an excessive-force theory, and the trial record as a whole, undercut the District Court's post-verdict characterization of the claim submitted to the jury as resting on a failure-to-protect theory. App. at 154-55. The verdict-directing instructions specifically state that the claim submitted was an excessive-force claim, but then proceed to tell the jury to apply a deliberate-indifference standard

defined by a failure-to-protect theory.  The many references made to an "excessive-force claim" and the dissonance between that characterization of the claim, which was entirely proper in terms of the manner in which the claim was presented and tried, and the constitutional standard applied by the District Court cause us to conclude that the instructions as a whole neither fairly nor adequately submitted the issues in the case to the jury.[6]  White, 141 F.3d at 1278.

Because the underlying right at issue throughout this case was Bobby Andrews's constitutional right to be free from the use of excessive force, we turn to an examination of the appropriate constitutional standard.  This Circuit has not addressed the constitutional standard applicable to § 1983 excessive-force claims in the context of involuntarily committed state hospital patients.  In other situations in which excessive force is alleged by a person in custody, the constitutional standard applied may vary depending upon whether the victim is an arrestee, a pretrial detainee, or a convicted inmate of a penal institution.  If the victim is an arrestee, the Fourth Amendment's "objective reasonableness" standard controls.  Graham v. Connor, 490 U.S. 386, 388 (1989).  The evaluation of excessive-force claims brought by pre-trial detainees, although grounded in the Fifth and Fourteenth Amendments rather than the Fourth Amendment, also relies on an objective reasonableness  standard.  Johnson-El v. Schoemehl, 878 F.2d 1043, 1048-49 (8th Cir.), cert. denied, 493 U.S. 824, 871 (1989). While we have not drawn a bright line dividing the end of the arrestee's status and the

---

[6]Furthermore, although given our disposition of the case we need not and do not address appellants' argument that the jury verdict was against the weight of the evidence, we express some concern on that point.  Liability for Bobby Andrews's injuries was attributed to each of the appellants without delineation as to which aide or aides actually compressed Bobby Andrews's airway or otherwise used excessive force. We find this troublesome, considering the evidence at trial suggesting that not every security aide present at the takedown participated equally in Bobby Andrews's restraint and that each of them was fully occupied with his own contribution to the joint effort to subdue this large and violent man.

beginning of the pre-trial detainee's status, see, e.g., Wilson v. Spain, 209 F.3d 713, 715 & n.2 (8th Cir. 2000), it is clear that the state may not punish a pretrial detainee. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Williams-El v. Johnson, 872 F.2d 224, 229 (8th Cir. 1989). Excessive-force claims brought by prisoners fall under the protections provided by the Eighth Amendment's prohibition of cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 318-22 (1986). We consider "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. at 320-21; see also Estate of Davis v. Delo, 115 F.3d 1388, 1394 (8th Cir. 1997).

Andrews's excessive force claim does not fit neatly into an analysis based on status as an arrestee, a pre-trial detainee, or a prisoner. Bobby Andrews was held in Fulton after having been found not guilty of murder by reason of insanity, and thus he was not a "prisoner" subject to punishment. See Bell, 441 U.S. at 535 (holding that due process requires a finding of guilt prior to punishment). The Eighth Amendment excessive-force standard provides too little protection to a person whom the state is not allowed to punish. On the other hand, the state of Missouri was entitled to hold Bobby Andrews in custody. His confinement in a state institution raised concerns similar to those raised by the housing of pretrial detainees, such as the legitimate institutional interest in the safety and security of guards and other individuals in the facility, order within the facility, and the efficiency of the facility's operations. Johnson-El, 878 F.2d at 1048. Accordingly, we conclude that Andrews's excessive-force claim should be evaluated under the objective reasonableness standard usually applied to excessive-force claims brought by pretrial detainees.[7]

[7]We note that the appellants' proposed verdict-directing instruction, rejected by the District Court, contained the constitutional standard we hold should have applied to Andrews's excessive-force claim. Their proposed instruction tracked the language of the Eighth Circuit Model Instruction 4.20 on Excessive Use of Force—Pretrial Detainees—Fifth and Fourteenth Amendments. Manual of Model Civil Jury Instructions 4.20 (1999). We believe that an instruction similar to 4.20 would have

Based on the foregoing discussion, we hold that the District Court abused its discretion by instructing the jury on a deliberate indifference and failure-to-protect theory rather than on an excessive-force theory under the objective reasonableness

accurately stated the law and the theory of Andrews's case. For convenient reference, we set forth the text of Model Instruction 4.20:

> Your verdict must be for plaintiff [and against defendant _____] [here generally describe the claim] if all the following elements have been proved by the [(greater weight) or (preponderance)] of the evidence:
>
> *First*, defendant [here describe an act such as "struck, hit, or kicked"] plaintiff, and
>
> *Second*, the use of force was excessive because it was not reasonably necessary to [here describe the purpose for which force was used such as "restore order," or "maintain discipline,"], and
>
> *Third*, as a direct result, plaintiff was damaged, and
>
> [*Fourth*, defendant was acting under color of state law.]
>
> In determining whether such force [if any] was excessive, you must consider such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted, and whether it was used for punishment or instead to achieve a legitimate purpose such as maintaining order or security within [here describe the facility in which plaintiff was incarcerated] and whether a reasonable officer on the scene would have used such force under similar circumstances.
>
> If any of the above elements has not been proved by the [(greater weight) or (preponderance)] of the evidence, then your verdict must be for defendant.

Manual of Model Civil Jury Instructions 4.20 (1999) (footnotes omitted).

standard applied in Fourth, Fifth, and Fourteenth Amendment excessive-force cases. While a failure-to-protect claim might have been available on the facts of Andrews's case, excessive force was the case that was tried and argued to the jury.[8]  Such instructional error adversely affected the substantial rights of the appellants because it allowed the jury to assign liability to each of the appellants for a use of force which it was never required to evaluate under proper constitutional standards.  Thus, we vacate the judgment and remand for a new trial.

## IV.

Because we reverse and remand for a new trial, we briefly address the evidentiary objections raised by appellants.  United States v. Amerson, 938 F.2d 116, 118-19 (8th Cir. 1991) (addressing objections likely to arise on retrial).  First, appellants argue that the District Court erred by allowing Brandy Andrews to present the testimony of Johnny Pleas because he was not a competent witness.  Pleas was an involuntarily committed patient at Fulton at the time Bobby Andrews died; he was in the day room and witnessed the events resulting in Bobby Andrews's death.  Appellants argue that a Missouri statute deeming mentally ill persons incompetent to testify should govern the admission of Pleas's testimony.  We disagree.

---

[8]We recognize that failure to protect can be a viable substantive-due-process claim as applied to involuntarily committed mental patients.  See Youngberg v. Romeo, 457 U.S. 307, 316 (1982); Kennedy v. Schafer, 71 F.3d 292, 294 (8th Cir. 1995); Goodman v. Parwatikar, 570 F.2d 801, 804 (8th Cir. 1978).  We distinguish the present sort of case—where security staff at an institution must act quickly and effectively to guard staff, other patients, and themselves against a patient's own violent or abusive actions—from the situations discussed in the substantive-due-process cases where vulnerable patients need to be protected, through before-the-fact measures, from themselves, other patients, or the deliberate harmful actions of the institution's staff members.

Federal Rule of Evidence 601 governs the competency of witnesses in federal court. "Every person is competent to be a witness except as otherwise provided in these rules." Fed. R. Evid. 601. Rule 601 contains a single exception to this general rule of competency—state law governs competency when it "supplies the rule of decision." Id. This proviso has no application, however, "in civil cases in which the substantive law being applied is found in some federal statute. Hence, the federal law of competency governs suits under . . . the various federal statutes concerning civil rights." 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6007, at 74 (1990). Furthermore, "[w]here state substantive law is being used 'to fill the interstices or gaps in federal statutory phrases' as part of the 'federal common law,' the Conference Report [on FRE 601] suggests that state competency law need not be applied under Rule 601." Id. at 75.

Appellants cannot plausibly argue that state law provides the "rule of decision" in this case simply because the District Court applied Missouri law to determine the question of standing to sue, as required by 42 U.S.C. § 1988(a). Pleas was competent to testify under Rule 601's provisions; no other provision of the Federal Rules of Evidence provides to the contrary. Furthermore, the court adequately evaluated his ability to testify truthfully before admitting his videotaped deposition testimony.[9] Pleas's status as an involuntarily committed schizophrenic was available for the appellants' use to challenge Pleas's credibility. But his status does not ipso facto render him incompetent to testify in federal district court, and we cannot say the District Court abused its discretion by allowing Andrews to present his testimony.

We have carefully considered appellants' other evidentiary objections, evaluating them under the abuse-of-discretion standard. Dominium Mgmt. Servs., Inc. v. Nationwide Hous. Group, 195 F.3d 358, 367 (8th Cir. 1999). We find no abuse of

_____

[9]At the time of trial, Pleas was no longer confined at Fulton. The court admitted his videotaped deposition because Andrews could not secure his presence at trial.

-15-

discretion in the rulings of the District Court on these matters.

V.

In her cross-appeal, Andrews challenges the District Court's order vacating the damages awarded to her for injuries she suffered as a result of her father's death. Andrews argues that surviving family members should be allowed to collect damages on their own behalf in a § 1983 claim for the wrongful death of another.

We previously have declined to decide this question. Yellow Horse v. Pennington County, 225 F.3d 923, 927 (8th Cir. 2000). Andrews points out, correctly, that the circuit courts of appeal disagree regarding the availability of such damages under § 1983. In Berry v. City of Muskogee, 900 F.2d 1489, 1506 (10th Cir. 1990), the Tenth Circuit held that the court could not supplement the damages available to the plaintiff under the state survival statute with those available under the state wrongful death statute. The court reasoned that the wrongful death statute allowed collection of damages for items that the "decedent could not have recovered had he lived to sue for himself," such as loss of companionship and grief. Id. Thus, the court concluded that borrowing the damages available in the wrongful death statute would be "inconsistent with the predominance of the federal interest," and therefore would fail to satisfy the § 1988 criteria for borrowing state law. Id. The court concluded by outlining a federal remedy to be applied in § 1983 death cases that included compensatory damages such as medical and burial expenses, pain and suffering before death, loss of earnings based on the probable duration of the victim's life, the victim's loss of consortium, and other damages recognized in such common-law tort actions. See id. at 1506-07.

The Fifth Circuit stands opposite the Tenth Circuit in its treatment of the damages available to a plaintiff in a § 1983 death case. In Brazier v. Cherry, 293 F.2d 401, 409 (5th Cir.), cert. denied, 368 U.S. 921 (1961), the court held that a plaintiff who sued as administratrix of the decedent's estate and in her individual capacity (as

-16-

the decedent's widow) had standing to pursue a claim for damages on both accounts. The Fifth Circuit continues to follow this holding. See Rhyne v. Henderson County, 973 F.2d 386, 391 (5th Cir. 1992) (holding that mother seeking to recover for her own injuries arising out of the wrongful death of her son had standing to pursue § 1983 action and did not have to prove that the county acted with specific intent to deprive her of a familial relationship).

Our careful consideration of the competing arguments on this issue leads us to conclude that the approach of the Tenth Circuit, as set forth in Berry, represents the correct assessment of the damages available in § 1983 death cases. As the court aptly explained in Berry, adoption of the approach Andrews advocates would "place into the hands of the state the decision as to allocation of the recovery in a § 1983 case, and, indeed, whether there can be any recovery at all." 900 F.2d at 1506. We believe that, by allowing the measure of damages in Andrews's suit to be entirely defined by the language of the Missouri wrongful death statute, we would impermissibly broaden the types of injuries for which Congress intended recovery to be available under § 1983's authorization of liability "to the party injured." 42 U.S.C. § 1983. Andrews did not bring a separate claim for injury to her own constitutional rights, nor did she pursue her supplemental state-law wrongful death claim. See Westcott v. Crinklaw, 133 F.3d 658, 660 (8th Cir. 1998) (discussing and denying availability of loss of consortium damages in a § 1983 suit brought by personal representative of decedent's estate, noting that case was not pleaded as a wrongful death claim). She cannot shoehorn recovery available to her under such separate claims into the recovery she may receive under § 1983 for her father's injuries. Thus, we affirm the order of the District Court on Andrews's cross-appeal.

VI.

We hold that Brandy Andrews has standing under the Missouri wrongful death statute, Mo. Rev. Stat. § 537.080, to bring this 42 U.S.C. § 1983 action for the injury

suffered by her father at Fulton State Hospital. We conclude that the District Court committed no abuse of discretion in the evidentiary rulings challenged in this appeal. But we do hold that the court abused its discretion by giving erroneous verdict-directing instructions, and we therefore vacate the judgment for Andrews entered by the District Court and remand for a new trial. Because we remand for a new trial, we do not reach the merits of the punitive-damages and the weight-of-the-evidence issues raised by appellants. We affirm the judgment of the District Court in Andrews's cross-appeal.

BYE, Circuit Judge, concurring.

I join in the opinion of the court with the exception of footnote 8. The majority adopts a blanket rule which seems to foreclose failure-to-protect claims against security staff at an institution whenever they must act quickly to guard staff, other patients, or themselves against a patient's sudden outbursts. I disagree with this approach. Security staff at prison and mental institutions are invariably trained and retrained to respond to sudden prisoner and patient outbursts. Because of this training, we must expect that their conduct will usually include some level of deliberation. Therefore, I believe a claim alleging deliberate indifference under a failure-to-protect theory can be viable in some situations involving sudden outbursts. Each case should stand on its own facts.

Not only do I disagree that we can adopt a blanket rule, I believe the majority's rule is overinclusive. I can envision situations involving sudden outbursts where we should recognize a failure-to-protect claim under a deliberate indifference standard. For example, security staff might adopt a *practice* of employing unconstitutional restraint measures when responding to sudden outbursts. Or a staff member, as a result of sufficient animus against a particularly troublesome patient, could fail to protect the patient from unreasonable restraint by deliberately standing by idly while a coworker employs a prohibited chokehold.

I agree that the facts of this particular case do not support a failure-to-protect claim, and therefore join the majority opinion in all other respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.